UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN RE HURRICANE SANDY CASES

------------------------------------------------------------X
THIS DOCUMENT APPLIES TO:
**ALL RELATED CASES**
------------------------------------------------------------X

**ORDER**

14 MC 41

## CASE MANAGEMENT ORDER NO. 13

In January 2014, the undersigned Committee of Magistrate Judges ("the Committee") was appointed by the Board of Judges in connection with the more than 800 cases then filed arising from Hurricane Sandy. Among other things, the Committee was tasked "to recommend procedures to ensure proper case filing . . . to establish a plan for expedited discovery, and to facilitate the efficient resolution of these matters in a manner designed to avoid the duplication of effort and unnecessary expense." CMO No. 1 at 1 (Feb. 21, 2014). The number of Hurricane Sandy cases has since grown to more than 1,200. Through the concerted efforts of the undersigned, who have held hundreds of conferences and issued more than a dozen case management orders, along with an unprecedented expenditure of resources by the Court, the Committee designed and implemented an expedited discovery procedure. In addition, the Court expanded its mediation panel and provided training specifically tailored to the issues raised in these cases.

To date, approximately 25% of those cases originally filed have been successfully resolved, largely through this expedited discovery and mediation process. Although another approximately 490 cases have since been filed, currently over 600 cases are scheduled for mediation or in the process of mediation. Others, filed more recently, are in various phases of the

1

Committee's procedure; some are in the process of being served; some are awaiting answers; and still others are exchanging discovery pursuant to CMO Nos. 1 and 8. While the procedure has, by and large, been embraced by the parties, in some instances, resolution of the cases has been thwarted by what can only be described as dilatory and unreasonable actions by certain counsel.

To be clear, there are many reasons for heightened diligence in these cases. There are, of course, victims who, more than two years after the storm, remain unable to get review of their claims. On the other hand, because of the structure of FEMA's WYO Flood insurance program, the defense of these claims is funded by the taxpaying public; thus, care must be taken to ensure both that claims are legitimate and properly documented and that they are litigated in an cost-effective manner. At the same time, prolonged litigation, with its attendant expense[1] and ultimate delay in the efficient resolution of these cases benefits neither the storm victims nor the public. In CMO No. 3, the Committee reminded counsel of these imperatives:

> Counsel for all parties are reminded, as set forth in CMO #1, that these cases present a massive undertaking and require the balancing of serious, competing interests. See CMO #1 at 2 ("the Court must ensure that victims of the storm, many of whom were rendered homeless for a time and who may be left without the necessary records or access to qualified contractors to effect repairs, receive an expeditious review of their claims, while at the same time, safeguarding insurers from meritless or inflated claims"). As such, this is not a time for "business as usual." Extraordinary circumstances call for extraordinary measures. And counsel are not only expected, but required, to work diligently, cooperatively and reasonably to help ensure a fair and efficient resolution of these cases. See Local Rule 26.4 (requiring cooperation among attorneys).

CMO No. 3 (April 7, 2014) at 7.

---

[1] Alarmingly, one attorney prominently involved in coordinating the defense of the WYO carriers has predicted that the defense of these cases could cost more than $100 million, a figure that likely exceeds the cost of settling all of the cases at full value.

Yet, repeated exhortations by the members of the Committee appear to have gone unheeded. In fact, while the Committee recognizes that many counsel in these cases have proceeded in good faith, in an unacceptable number of cases, attorneys -- in some cases those with responsibility for a large number of cases -- have acted in a manner that is objectively unreasonable or seemingly calculated to delay efficient resolution of the cases.

On November 25, 2014, the Committee held a Liaison Counsel conference ("the conference") with Plaintiffs' and Defendants' Liaison Counsel, representatives from FEMA, and any other counsel in Hurricane Sandy cases who wished to attend, in an attempt to address the issues that seem to be hindering successful mediations. This Order provides certain procedures to deal with those problems that have been identified to the Committee.

A. <u>Failure to Participate in Good Faith During Mediation</u>

Despite the clear mandate of this Committee, as well as applicable rules and law, directing counsel to participate in good faith in mediation and settlement discussions, in certain instances, counsel for both plaintiffs and defendants have failed to do so.

In several cases reported to the Committee, defense counsel have, while appearing at mediation sessions, refused to participate in settlement talks, claiming that they have not received necessary documents or other information from plaintiffs. See, e.g., <u>Weber et al. v. Allstate Ins. Co.</u>, 13-cv-6752 (DE [84]) (explaining that "Defendant came to mediation with no offer and no intention of settlement. Defendant refused to discuss or even consider Plaintiffs' estimate. Defendant categorically refused to participate in any meaningful, good faith discussion about resolving Plaintiffs' . . . claim"); <u>Yannello et al. v. Allstate Ins. Co.</u>, 13-cv-6720. These refusals to participate have followed court conferences in which defendants' counsel have represented to

3

the Court that they have received all of the information needed to proceed to mediation.  Had defense counsel conferred with counsel for plaintiffs or contacted the Court prior to the scheduled mediation to indicate what they still needed, steps could have been taken to avoid wasting the time of counsel and the mediators.  Such conduct can only be viewed as dilatory.

In another instance, after mediation had failed to resolve the case, defense counsel advised the Court that "depositions of the Plaintiffs, their engineer, their contractor and the public adjuster are necessary to complete discovery."  Stapleton v. Wright, 14 CV 470 (DE [57]).  Although counsel are well aware that the Court has, with the input of counsel for both sides, narrowly tailored discovery in these matters in an effort to reach a fair and efficient resolution, without any reasoned explanation of the need for this additional discovery, the Committee is left to conclude that in refusing to settle cases absent such extensive discovery, defense counsel is seeking to unreasonably delay resolution of the these cases and inflate the costs and fees required to conduct such discovery.  Given the modest amounts at stake in many of these cases, and in light of the fact that litigation is being funded by the taxpaying public, it seems highly unlikely that such a broad unilateral expansion of discovery would reasonably be warranted.

Counsel for plaintiffs have fared only marginally better.  Defendants cite to the regulations issued by FEMA to argue that, in the absence of documentation showing what was repaired, the costs of those the repairs, and detailed estimates of the costs necessary to repair any other covered items, defendants are not authorized to compromise claims.  Defendants complain that in many instances, plaintiffs have not produced the necessary items prior to the date of mediation, only to appear at the mediation sessions with pages of invoices and documentation that are not tied directly to specific items of damage, requiring counsel to spend hours sifting through

4

the documents for the first time during the mediation session.

The problems created by this last minute production of documents have been further complicated, in some instances, by the fact that plaintiffs have not actually been present or even available to answer questions during the mediation.[2] Thus, there have been cases where, without plaintiffs' assistance, it has been difficult to determine what repairs have been made and what receipts reflect payments for those particular repairs.

As a result of complaints of plaintiffs' repeated violations of their discovery obligations, the Committee has issued multiple warnings to the firm of Gauthier Houghtaling & Williams, which represents the vast majority of plaintiffs in these cases. See, e.g., No. 14 MC 41 (DE [472] at 31) (warning Gauthier attorneys that there will be "most dire consequences" for failure to comply with the CMOs). In response, John Houghtaling, a managing partner of the firm, stated to the Committee: "I receive the message," assuring the Committee that the firm had the appropriate resources to meet its obligations. Id. Apparently, though, the message has not been received. On November 7, 2014, based upon the firm's failure to comply with multiple discovery orders in two cases, Magistrate Judge Brown imposed a monetary sanction on the Gauthier firm pursuant to Fed. R. Civ. P. 37(b)(2)(A). See No. 14 MC 41 (DE [636]).

---

[2] Although Plaintiffs' Liaison Counsel disputed the claim that the homeowners were unavailable for consultation at the mediations, following the November 25th conference, the Committee received two notices of failed mediations in which it was represented that plaintiffs were not present at the mediations. See Balinsky v. Allstate Ins. Co, 13 CV 6996 (DE [96]); Salle v. Allstate Ins. Co., 13 CV 6020 (DE [91]).

In part, plaintiffs' inability to comply with their discovery obligations stems from the fact that they are often faced with a moving target in terms of what has been demanded and what is eventually required by defendants. For example, in at least one case, plaintiff had provided a contractor's invoice demonstrating that repairs to storm damaged property had been made. The handwritten invoice, endorsed by the contractor and signed "paid" was deemed insufficient by defendant's counsel, who stated that, in the absence of cancelled checks, the insurer would require the production of plaintiffs' bank statements in order to demonstrate cash withdrawals. In a subsequent letter to the Court further explaining its position, counsel for defendant Allstate stated: "[h]andwritten notations indicating that a bill or invoice has been 'paid in full,' however, are not sufficient proof of payment as required by the NFIP but are merely evidence that a cost has been incurred." Fitzpatrick v. Allstate, 13 CV 6768 (DE [78]). At the conference, the representative from FEMA indicated that this type of proof was in fact acceptable to FEMA because it could, if necessary, be verified directly.[3]

Defendants report that these problems of insufficient documentation have been exacerbated in some instances by plaintiffs' counsel's refusal to permit their clients to speak or answer questions at mediation. This refusal undermines one of the fundamental functions of the mediation process and is contrary to this Committee's determination to forego lengthy depositions of plaintiffs in every case, so long as they were present at the mediation to fill in evidentiary gaps

---

[3] On November 21, 2014, Defendants' Liaison Counsel submitted a letter to the Committee attaching a memorandum issued by James A. Sadler, Director of Claims at FEMA which discussed the settlement of WYO Flood Insurance claims. The memorandum explained that "If repairs have been completed, it is the policyholder's responsibility to prove that the amounts paid on the claim plus the value of the deductible(s) and any applicable physical depreciation were spent to repair or replace covered flood damage. This can only be done by presenting receipts, paid bills, paid invoices, and cancelled checks. The amount of loss cannot be determined on an estimate that is not fully supported by the proof discussed above." At the conference, however, counsel for FEMA explained that FEMA might be more flexible in the proof that is required and that it is willing to work with the parties to resolve these cases where such proof is lacking.

in the documentation and answer questions about repairs.  To the extent that plaintiffs' counsel expressed concern that their clients might be subjected to a "depositions" during the mediations or asked irrelevant harassing questions, the Committee reminded counsel that mediators would help prevent any improper conduct and counsel will be present and capable of objecting to any improper inquiries.

      During the conference, Professor Charles Platto, an expert on insurance law and one of the Court's Hurricane Sandy mediators, conveyed his thoughts on some of the problems he has encountered in attempting to resolve the NFIP flood cases.  In essence, he indicated that the attorneys often came to the mediation session with no demand, no offer, and having failed to conduct an analysis of their client's evidence.  He urged the parties to confer well in advance of the mediations, to be prepared to explain their positions, specifically, where their estimates of damage differed and to have provided the documents supporting the plaintiffs' claims.  Patricia Lambert, Esq., counsel for Harleysville Worcester Insurance Company and Nationwide Fire Insurance Company, indicated that she viewed the mediations as a "process," not a one-time event, and she described a willingness on the part of her client to continue discussions even after the first mediation session had ended.  Like Professor Platto, she urged plaintiffs' counsel to be prepared prior to the mediation to not only identify where the adjusters' estimates differed but to explain why plaintiffs believed that a certain item was covered or cost more than the defendants' adjuster had allotted.

      Finally, apart from the issue of counsels' conduct during the mediations, in many cases, counsel for both parties have chosen to conduct mediations in Louisiana for the convenience of the lawyers, even though plaintiffs generally do not travel to attend these sessions.  While Louisiana

may be convenient for the lawyers, many of the plaintiffs live in New York; the properties at issue are located in New York, as is the evidence and potential witnesses, such as experts and adjusters, who are generally from New York. The need for plaintiffs, and sometimes adjusters and experts, to be present at the mediations has proven to be a critical factor in some mediations. As noted, the absence of the plaintiffs at the mediations defeats one of the purposes of the mediation – namely, to facilitate the informal exchange of information to help resolve disputes about repairs and costs of repairs. In at least one instance, counsel cited the absence of the plaintiffs at the mediation, who could only be available by phone, as the central reason behind the failure of the process. Since defendants have not been permitted to depose plaintiffs, it is no longer acceptable to conduct mediations if the plaintiff is not present and available to answer questions.

Furthermore, the scheduling of mediations – particularly those in Louisiana – has unnecessarily delayed resolution of these actions. Frequently, the Court has set short deadlines for mediation only to be informed by counsel that the mediations had been scheduled months into the future. In one case, <u>Denora v. Allstate Ins. Co.</u>, 14-cv-6925, even though the Order sending the case to mediation had issued on September 2, 2014, defendants indicated that the reason the mediation could not be scheduled until March 2015 was an inability to coordinate the schedules of the chosen mediator and the one and only corporate representative assigned to attend the mediations in all 200 plus cases involving this defendant. In another set of cases, counsel reported that they were unable to retain a mediator from the Eastern District of New York panel, even though there are 85 trained mediators ready and willing to undertake mediations in these cases. The Committee member in charge of monitoring that case was obliged to assign a mediator.

8

The conduct that has led to these delays will no longer be tolerated. While there are some insurance carriers on both the wind and flood sides that have been able to successfully settle a good percentage of their cases, others have had less success. Accordingly, after hearing the complaints and suggestions of the parties and considering the helpful comments of Professor Platto, the Court ORDERS as follows:

1) The parties are to comply with CMO No. 12, which sets forth a new procedure for the selection of mediators and should obviate any complaints that Eastern District of New York mediators are not available to conduct mediations within the time frame ordered by the Committee. If the parties are unable to select a mediator themselves, the Committee will select one for them.

2) There will be no further mediations conducted in Louisiana. The presence of the plaintiffs, and in some instances, the adjusters and/or other experts, is critical to the success of the mediation process. To the extent mediations are currently scheduled to proceed in Louisiana in the next 30 days, they will be allowed to proceed, with the caveat that plaintiffs are to be available in person or by telephone during the entire mediation session.[4]

3) Plaintiffs shall participate actively in mediations. In absence of an issue involving privilege, instructions to plaintiffs not to answer questions are deemed inappropriate. The mediation process is confidential; anything said during the mediation may not be used against the plaintiffs later in the litigation and if counsel believes that the questioning is improper or harassing,

---

[4] By letter dated November 29, 2014, plaintiffs' counsel, Mr. Williams from the firm of Gauthier, Houghtaling & Williams, argues that mediations should be allowed to proceed in Louisiana, because the attorneys will lose valuable time travelling to and from New York, and the added monetary expense incurred will have an adverse impact on the plaintiffs who will be forced to bear these litigation expenses. Given the lack of overwhelming success in the Louisiana mediations to date, in part due to the absence of the homeowners and lack of documentation, the Court denies plaintiffs' request. However, if plaintiffs can demonstrate, through the mediations scheduled to proceed in Louisiana in the next 30 days, that the procedure is successful, the parties may seek reconsideration of this Order at that time.

9

they can appeal to the mediator to intercede.

4) Where the issue involves a difference of agreement between adjusters' estimates or engineering experts' conclusions, the parties are strongly encouraged to have their adjusters and/or engineers present for the mediation.

5) No party shall unilaterally terminate a mediation session; mediation shall continue until the mediator determines that the session has concluded. It will be up to the mediator to decide if the session should be adjourned and reconvened at a later date.

6) At least 30 days prior to the scheduled mediation, plaintiffs shall convey, in writing, a demand to defendants' counsel, along with a detailed description of plaintiffs' position regarding areas of disagreement, including any critiques of defendants' expert's or adjuster's conclusions, supported by all documentation. With limited exception to be left to the mediators, documents not provided 30 days before the mediation may not be used at mediation and may, after application to the Committee, be excluded from use at trial.

7) Within two weeks thereafter, defendants are to notify plaintiffs' counsel of any items or any perceived gaps in documentation, as well as defendant's statement as to areas of disagreement.

8) The mediators will hold a pre-mediation conference two weeks in advance of the mediation and review with the parties the checklist of items necessary to conduct a successful mediation, provided in the memorandum, dated November 20, 2014, which was sent to the mediators. It will be left to the discretion of the assigned mediator to adjourn the conference if necessary to obtain more information. However, the parties are warned that where parties indicate a readiness for mediation to the Court, and then later contend that they could not settle because they were missing certain items, sanctions will be imposed.

9) If the parties reach an impasse on a factual issue such as the cause of foundation damage, that requires resolution of expert testimony in a framed issue hearing, the parties should jointly notify the Committee member handling the case, preferably prior to the scheduled mediation, so that the hearing can be held expeditiously and hopefully allow the mediation to proceed more smoothly.

The Court and the Committee expect the parties to proceed to these mediations in good faith and having fully prepared to present their arguments and evidence at the mediation. <u>It is the responsibility of both sides to fully prepare for mediation before the scheduled mediation session</u>.  That includes notifying your adversary counsel, the Committee member monitoring your case, or the mediator if you are missing something.[5]

All counsel are admonished that further dilatory tactics or a lack of good faith in the diligent prosecution and resolution of these cases will be subject to sanctions.  Counsel are instructed that these matters should be treated with a sense of urgency.  Members of the Committee will employ the full panoply of available sanctions, including monetary sanctions, cost and fee shifting, recommendations of dismissal and/or to strike answers and the revocation of *pro hac vice* status should additional instances of bad faith or dilatory tactics be discovered.

**SO ORDERED**.

Dated: Brooklyn, New York
    December 2, 2014

   /S/    CHERYL L. POLLAK
Cheryl L. Pollak
United States Magistrate Judge

---

[5] The questions raised regarding the procedure to be followed in <u>Raimey v. Wright National Flood</u>, 14-cv-461 will be addressed in a separate Order.

                                            /S/      GARY BROWN
                                            Gary Brown
                                            United States Magistrate Judge


                                            /S/      RAMON E. REYES, JR
                                            Ramon E. Reyes, Jr.
                                            United States Magistrate Judge