# MMG

McMAHON, MARTINE & GALLAGHER, LLP
ATTORNEYS AT LAW

*Principal Office:*
55 WASHINGTON ST.
BROOKLYN, NY 11201
TEL (212) 747-1230
FAX (212) 747-1239

*New Jersey Office:*
404 MARKET STREET
TRENTON, NJ 08611
TEL (609) 396-2999
FAX (609) 396-2254

<u>Via ECF</u>

December 5, 2014

Honorable Gary R. Brown
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

    Re:    *Raimey v. Wright National Flood Insurance Company*
              Cases 14-mc-41 and 2:14-cv-00461-JFB-SIL
              Response to Plaintiff's Counsel's Letter dated December 1, 2014

Dear Judge Brown:

      We represent defendant Wright National Flood Insurance Company ("Wright") in the above-referenced matter, and this letter responds to plaintiff's counsel's letters dated December 1 and December 4, 2014. Neither of plaintiff's counsel's letters involve the plaintiffs or the defendant in the referenced matter, nor do thy reference any adjusters or engineers who provided services in the referenced matter. This case is not the proper forum to raise issues unrelated to this case.

      Counsel's first letter begins with a compound false statement. With respect, there were no unique "engineering practices … uncovered in *Ramey*," as that letter recites, and accordingly, there is no basis for counsel's accusation that any defense counsel subscribing to the referenced documents made any "representations to the Court … that there is no evidence that other agents or contractors use similar engineering practices to those uncovered in *Ramey*" as it more fully recites.[1]

      We trust by now that Your Honor has had an opportunity to begin to consider the amicus brief of US Forensic, *Raimey* ECF 97-2, and more importantly, the report of independent New York State licensed professional engineer James Cohen, PE annexed thereto, *Raimey* ECF 97-4 together with that engineer's *curriculum vitae*, *Raimey* ECF 97-3. We incorporate those

---

[1] Four separate defense counsel jointly subscribed to a submission that said: "Defendants note that there is no evidence that adjusting companies, adjusters, other engineering companies, engineers or other "agents or contractors" use a similar process or even if so, that the process is tainted in any way." *Raimey* ECF 92 at 3-4. As discussed more fully in the referenced report of James Cohen, P.E., there is nothing tainted in any way about the review process employed in the Raimey matter.

1

documents by reference herein rather than repeat their contents at length. In response to Hurricane Sandy, Mr. Cohen's structural engineering competency, professionalism and integrity were sought out by, among others, both the City and State of New York. *Id.* Mr. Cohen's 35-page report bears close, studied reading in its entirety, but for the purposes of this letter we respectfully note its conclusions:

> 1. The peer review process is an industry accepted method of reviewing engineering work products, including forensic engineering reports.
>
> 2. The use of redlining is an industry accepted method of carrying out peer reviews on engineering work products, including forensic engineering reports.
>
> 3. The use of the peer review process as carried out by U.S. Forensic in the building damage evaluation of 24 Michigan Street followed acceptable procedures.
>
> 4. The redlining method utilized in the U.S. Forensic peer review process made those suggestions readily apparent to the inspecting engineer, and allowed him to simply "accept" or "reject" the comment.
>
> 5. The draft report prepared by George Hernemar following his initial site visit of December 4, 2012, contained gross errors regarding observed damage and cause and was clearly a draft report not intended for issue.
>
> 6. The report ultimately issued by U.S. Forensic following the peer review of Mr. Hernemar's draft report from his initial site visit of December 4, 2012, remedied the gross errors regarding observed damage and cause and is reasonable and accurate in its content and conclusions.
>
> 7. The draft report prepared by George Hernemar following his supplemental site visit of January 25, 2013, is reasonable in its content and conclusions.
>
> 8. The report prepared by George Hernemar and issued by US Forensic following his supplemental site visit of January 25, 2012, is reasonable in its content and conservative in its conclusions.

*Raimey* ECF 97-4 at p. 35.

      As noted above, the claim of Steven and Sarise Dweck has nothing to do with the *Raimey* plaintiffs, nothing to do with defendant Wright, and nothing to do with the engineering firm Wright retained for the Raimey claim. The Dwecks' claim involved a different house, different insurance company, and different engineers. The issues, rights and remedies, if any, of the parties to the Dweck claim stand apart from the issues, rights and remedies of the parties to the *Raimey* lawsuit, in which a licensed field engineer considered and accepted comments and

suggestions made by a licensed reviewing engineer, all in a way that a third engineer, Mr. Cohen, has now told the Court is accepted and proper in the profession.[2] Moreover, on November 25, 2014, plaintiff's counsel filed a complaint on behalf of Steven and Sarise Dweck against the insurer in that case, Hartford Insurance Company of the Midwest, and others.[3] The other defendants named by Mr. Mostyn include Nielsen, Carter & Treas, LLC and partner William T. Treas of that firm. Discovery concerning issues alleged to be relevant to the Dwecks should properly be reserved to that case.

Likewise, the claim of Gary and Milena Shylonsky has nothing to do with the *Raimey* plaintiffs, nothing to do with defendant Wright, nothing to do with the engineering firm Wright retained for the Raimey claim, and nothing to do with any defense counsel in *Raimey*. The Shylonsky's claim involved a different house, different insurance company, different insurance company counsel, and different engineers. The issues, rights and remedies, if any, of the parties to the Shylonsky claim stand apart from the issues, rights and remedies of the parties to the *Raimey* lawsuit. Again, Nielsen, Carter & Treas did not represent Travelers in the Shylonsky claim.

Plaintiff's counsel introduced himself to this court as *pro bono* counsel with just this one case, *e.g.*, *Raimey* ECF 80, and continues to present himself that way, *Raimey* ECF 100 at p. 25. Rapidly following the November 7 Order in this case though, counsel revealed the beginning of the actual, very substantially for-profit agenda with his November 21, 2014 filing of a purported class action complaint seeking treble damages for alleged violations of RICO, 18 U.S.C. §1962(c) plus costs, disbursements and prejudgment interest.[4] His just-filed *Dweck* lawsuit follows the same model. The *Raimey* case should not be a vehicle for class action counsel's convenience or strategy.

In all events, an evidentiary hearing regarding an argument jointly made by four separate WYO Program carrier defense counsel that "Defendants note that there is no evidence that adjusting companies, adjusters, other engineering companies, engineers or other 'agents or contractors' use a similar process or even if so, that the process is tainted in any way," *Raimey* ECF 92 at 3-4, would be grossly improper. "[L]awyers representing litigants should not be called as witnesses in trials involving those litigants if such testimony can be avoided consonant with the end of obtaining justice." *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282 (2d Cir. 2004), *quoting United States v. Alu,* 246 F.2d 29, 33 (2d Cir.1957). The apparent objective of plaintiffs' counsel is to force the disqualification of up to four experienced WYO Program flood defense firms for the strategic advantage of plaintiffs ("the

---

[2] Defense counsel's handling of the claimants' challenge to the engineering reports in that case was approved by FEMA (Letter to Dwecks' counsel from FEMA Director of Claims James A. Sadler dated June 19, 2014, Raimey ECF 830-9). The Dwecks were represented by counsel at all times. Nothing and no one prohibited them from retaining an engineer of their own. Perhaps they did. What is certain is that, represented by counsel and fully apprised of their rights by Mr. Sadler in his letter's closing paragraph, the Dwecks reconciled themselves to the engineers' findings, resolved the balance of their claim accordingly, and did not file suit. The cost to the taxpayer-funded National Flood Insurance Program ("NFIP") of engaging a third engineer to inspect and report, which did resolve the structural issues in the Dweck claim – about $2,500.

[3] Dweck et al v. Hartford Insurance Company of the Midwest, 1:14-cv-06920-ERK-JMA.

[4] Deborah Ramey and Robert Kaible v. U.S. Forensic, Llc, Gary L. Bell, Michael P. Garove, Harry George Hernemar, Wright National Flood Insurance Company, Colonial Claims Corporation and David Maxime, 2:14-cv-06861-ADS-AKT.

3

remedy where an attorney is called to testify may be to disqualify the attorney in his *representational* capacity…" *Id.* at 283.), on the ground that they advance an argument supported by the only competent evidence (of three New York State licensed engineers, including one completely independent of the underlying events) in this lawsuit regarding the engineering process and practices of one engineering firm.

However, we must note that we do share a concern with the plaintiffs' bar about the drafting of engineering reports in which the causation opinions in the final, exchanged reports vary from the initial opinions in first drafts. As the Court knows, plaintiffs in this matter have retained SE 2 Engineering as their expert.[5] We have recently learned that an SE 2 Engineering report prepared for a plaintiff attributed a house's structural damage to a cause of loss – subsidence – not covered under the SFIP. See Exhibit A attached hereto at p. 1 ("The soil adjacent to the house has subsided…"), and then a later, changed version of that same engineering report, attached hereto as Exhibit B, changed the causation opinion to read at p. 2, para. F.6: "The soil adjacent to the house was removed by flood…" The opinion change is material because it changes the cause of loss from an uncovered one, subsidence, to a covered one, scouring. Moreover, only the second report was exchanged with plaintiff's counsel's automatic disclosures in the case in question. The fact that happenstance is revealing that Gauthier, Houghtaling & Williams' frequently retained engineering firm SE 2 Engineering has issued at least one materially changed report (and because that law firm and every other plaintiff's firm interpreted the CMOs to not require them to get drafts not in their client's possession, just as every defense counsel interpreted the CMOs, we have no idea how many other changed reports SE 2 or other plaintiff's engineers may have issued) shows the need for the Court to make the draft gathering and production obligations of the parties bilateral.

Thanking Your Honor for your consideration, I remain,

Respectfully yours,

*/s/ Patrick W. Brophy*
Patrick W. Brophy

Cc:   All counsel via ECF

---

[5] SE 2 Engineering was not called by Mr. Mostyn to challenge the conclusions of Mr. Garove or Mr. Hernemar at the October 16, 2014 *Raimey* hearing.